UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL SAYLES,

Plaintiff,

**Hon. Hugh B. Scott**

-v-

08-CV-0747
Consent

**Decision
&
Order**

FISCHER, et al.,

Defendants.

Before the Court is the defendant's motion for summary judgment (Docket No. 22).[1]

## BACKGROUND

Plaintiff, Michael Sayles ("Sayles"), commenced this civil rights action pursuant to 42

U.S.C. § 1983 seeking a declaratory judgment and monetary damages for violations of his Fifth

Amendment right against self-incrimination and Fourteenth Amendment right to due process

resulting from the New York State Department of Correctional Services ("DOCS") operation of a

Sex Offender Counseling Program ("SOP"). (Docket No. 1). The defendants are current and

---

[1]   Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment (Docket No. 15).

former DOCS employees.[2] (Docket No. 23, ¶¶ 8-10). The following facts are undisputed unless otherwise noted.

In 2000, the plaintiff was convicted of his third felony-level Driving While Intoxicated ("DWI"), for which he received probation. In 2004, Sayles violated the terms of his probation when he was convicted of Assault and Aggravated Unlicensed Operation. Consequently, petitioner received a 2 to 6 year indeterminate sentence for the felony DWI and a 1 to 3 year concurrent sentence for Assault and Aggravated Unlicensed Operation conviction. (Docket No. 23, ¶¶ 4-12). The plaintiff began serving his sentence in DOCS custody in February, 2004. His conditional release date was calculated as September 24, 2007, and his maximum expiration date was September 24, 2009.[3]

On April 26, 2005, the Division of Parole ("DOP") interviewed plaintiff as a merit time applicant. On May 2, 2005, the DOP denied Sayles parole noting, among other things, his multiple DWI convictions.  The plaintiff then appeared before the DOP as an initial applicant on June 29, 2005. The DOP again denied the plaintiff parole on July 3, 2005. In doing so, it relied upon the erroneous information that the plaintiff had been convicted of seven DWI related offenses, four of which were felonies. In fact, the plaintiff had been convicted of six DWI offenses, three of which were felonies.  As a result, the plaintiff appeared before the DOP again on April 19, 2006 for a *de novo* hearing.  On this occasion, Sayles was denied parole due to his

---

[2] Defendant Brian Fischer ("Fischer")is the Commissioner of DOCS; defendant Lee Jubert ("Jubert") was the Deputy Superintendent of Security and Time Allowance Committee Chairperson at Bare Hill Correctional Facility; and defendant Christine Daggett ("Daggett") was a Senior Correction Counselor at Bare Hill Correctional Facility.

[3] Plaintiff was released in February of 2008, prior to his maximum expiration date. (Docket No. 23, ¶ 43).

multiple alcohol-related convictions, prior probation violation, and a Tier III infraction, discussed

below.  The plaintiff's next appearance date before the DOP would be in July 2007. (Docket No.

23, ¶¶ 13-19, 33-37).

On October 2, 2005, while incarcerated at Gowanda Correctional Facility ("Gowanda"),

the plaintiff was visited by his wife and 8-year old daughter.  During that visit, a Correctional

Officer observed Sayles' daughter sitting on his lap. According to the Officer, the plaintiff was

"touching/rubbing his daughter's chest area, buttock and groin area with an open hand." Sayles

disputes that the Officer witnessed him touching his daughter in an inappropriate manner.

(Docket. No. 23, ¶¶ 20-21; Docket No. 33-1, ¶ 21).

As a result of that incident, the Correctional Officer filed an inmate misbehavior report

charging Sayles with "touching/rubbing his daughter's chest area, buttock and groin area with an

open hand." A Tier III disciplinary hearing was conducted on October 7 and 11, 2005, after

which the Hearing Officer found the plaintiff guilty of the charge of Facility Visiting Violation.

The Hearing Officer went on to state that he believed that the  plaintiff did rub his daughter's

buttock and groin during the incident.  (Docket No. 23, ¶¶ 22-24).

On October 12, 2005, the Superintendent from Gowanda notified Sayles that he had been

found guilty of "inappropriate touching," and that his visiting privileges with his daughter were

suspended for a period of 180 days. In December of 2005, officials at Bare Hill Correctional

Facility requested guidance from the Office of Guidance and Counseling ("OGC") in Albany as

to whether the plaintiff's October 2, 2005 disciplinary report warranted a referral to a Sexual

Offender Program. After reviewing the facts and circumstances of the October 2, 2005  incident

and DOCS Policy and Procedure Manual for the Sex Offender Counseling Program, the OGC

determined that plaintiff should be placed in a SOP.  On December 28, 2005, the plaintiff

consented to participation in the SOP. (Docket No. 24, Bates No. 0023).  However, on March 27,

2006, while housed at Oneida Correctional Facility, Sayles refused to admit he was touching his

daughter, which was deemed to be a refusal to participate in the SOP program. Sayles executed a

form acknowledging that he was refusing to participate in the program, and that his refusal may

result in a negative decision by the DOP, a negative decision by the Time Allowance Committee,

and the denial of an Earned Eligibility Certificate.  (Docket No. 23, ¶¶ 25-32; Docket No. 24,

Bates No. 0024 and 0025).

Six months after the plaintiff's disciplinary hearing, the plaintiff appeared before the DOP

for his *de novo* parole hearing on April 19, 2006. See supra. Plaintiff was denied parole based on,

among other things, plaintiff's "multiple alcohol related convictions and prior probation

violation." The DOP noted that "program completions are noted and considered," and cited

plaintiff's Tier III infraction for facility visitation. The DOP concluded, "[b]ased on this record

you have demonstrated that you are unable to stop drinking and driving, accordingly

discretionary release is inappropriate at this time."  (Docket No. 23, ¶¶ 33-37).

On May 10, 2007, Sayles was notified by defendant Jubert that his name appeared on the

May 2007 Time Allowance Committee, that he had possible good time credits in the amount of

two years, and that the Committee determined that there may be sufficient reason not to

recommend the total amount of good time available to him. A Time Allowance Committee

hearing was held on May 17, 2007, after which the Committee recommended the withholding of

two years good time. (Docket No. 23, ¶¶ 38-39).

On July 10, 2007, the plaintiff again appeared before the DOP. At that time, the DOP

denied the plaintiff parole and issued a 24-month hold, noting that Sayles "drove while intoxicated and without a license in a continuation of a long standing record of alcohol-related driving offenses dating back to approximately 1986." The DOP also observed that since his last appearance, the plaintiff was denied an Earned Eligibility Certificate due to an "overall unacceptable level of program attendance" and had " lost all available good time credit." (Docket No. 23, ¶¶ 41-42). Plaintiff was ultimately released from custody in February, 2008. (Docket No. 23, ¶ 43).[4]

The defendants now move for summary judgment on the grounds that, *inter alia*, plaintiff has failed to allege a violation of his Fifth and Fourteenth Amendment rights, and in any event, the defendants' affirmative defense of qualified immunity.  (Docket No. 22).  For the reasons set forth below, the defendants' motion for summary judgment is granted.


## DISCUSSION

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c).  In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49

---

[4]   To the extent the plaintiff is seeking declaratory judgement for future assessment of good time credits or other discretionary privileges, the action is now moot.

(1986).

A fact is "material" only if the fact has some effect on the outcome of the suit. <u>Anderson</u>, 477 U.S. at 248; <u>see</u> <u>Catanzaro v. Weiden</u>, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248; <u>see</u> <u>Bryant v. Maffucci</u>, 923 F.2d 979 (2d Cir.), <u>cert. denied</u>, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts . . . or on the basis of conjecture or surmise."  <u>Maffucci</u>, 923 F.2d at 982 (citing <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)). According to the Second Circuit Court of Appeals, a party seeking to defeat a motion for summary judgment "must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 . . . , that there are specific factual issues that can only be resolved at trial." <u>Colon v. Coughlin</u>, 58 F.3d 865, 872 (2d Cir. 1995).


**Fifth Amendment Claim**

Plaintiff's first cause of action alleges a violation of his Fifth Amendment right against self-incrimination. (Docket No. 1, ¶¶ 47-54.) Specifically, plaintiff contends that the revocation of his good time credits, denial of parole, and denial of Earned Eligibility Certificate were improper, adverse consequences arising out of his refusal to admit to prior sexual offenses as part

of the SOP.

The Fifth Amendment  provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. The Fifth Amendment right against self-incrimination remains available to a prisoner despite his conviction. See Minnesota v. Murphy, 465 U.S. 420, 426 (1984). However, "[i]t is well established that the privilege protects against real dangers, not remote and speculative possibilities." Zicarelli v. New Jersey State Commission of Investigation, 406 U.S. 472, 478 (1972). "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." Marchetti v. United States, 390 U.S. 39, 53 (1968) (citations omitted).

The plaintiff does not allege that the defendants ever used, sought to use, or could have used any incriminating statement in a criminal proceeding. As such, the plaintiff fails to assert facts which would constitute a violation of his rights under the Fifth Amendment. Fifield v. Eaton, 669 F.Supp.2d 294, 298 (W.D.N.Y. 2009) (citing Chavez v. Martinez, 538 U.S. 760, 767 (2003) ("Here, [§1983 plaintiff]  was never made to be a 'witness' against himself in violation of the Fifth Amendment's Self-Incrimination Clause because his statements were never admitted as testimony against him in a criminal case."); see also McChesney v. Hogan, 2010 WL 1027443, *8 (N.D.N.Y. Feb. 26, 2010). Sayles's claim that he was unconstitutionally compelled to incriminate himself or face the loss of good time credits also fails. In McKune v. Lile, 536 U.S. 24 (2002), the Supreme Court held that the adverse consequences faced by the inmate (including the transfer to a potentially more dangerous maximum-security prison, curtailment of his visitation rights, earnings, work opportunities, ability to send money to family, canteen

expenditures, access to a personal television) were not so severe as to amount to compelled

self-incrimination.  McKune, 536 U.S. at 31, 38.  Although McKune did not involve a denial of

good time credits, the Second Circuit denied habeas corpus relief where the petitioner asserted

the denial of good-time credits for refusing to participate in a New York SOP.  Without deciding

the issue directly, the Second Circuit held that the denial of good time credits due to the SOP

requirement was not contrary to clearly established federal law under 28 U.S.C. § 2254(d)(1).

Edwards v. Goord, 362 Fed. Appx. 195, 198-99 (2d Cir. 2010). With respect to McKune, the

Second Circuit stated:

> All that can be said of McKune, then, is that a majority of the
> justices agreed that the Fifth Amendment privilege against
> compelled self-incrimination was not violated when prisoners
> faced less restrictive sanctions than Edwards faced here as a
> consequence of refusing to participate in sex offender counseling.
> While the plurality did note, in reaching its conclusion, that
> "respondent's decision not to participate in the Kansas [sex
> offender treatment program] did not ... affect his eligibility for
> good-time credits or parole," id. at 38, 122 S.Ct. 2017, the phrase
> "clearly established Federal law, as determined by the Supreme
> Court of the United States," 28 U.S.C. § 2254(d)(1), "refers to the
> holdings, as opposed to the dicta, of th[e] Court's decisions at the
> time of the relevant state-court decision," Williams v. Taylor, 529
> U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).
> Accordingly, we cannot conclude, on the basis of McKune, that the
> state court's determination that Edwards' constitutional rights were
> not violated by the DOCS program was contrary to clearly
> established Federal law as determined by the Supreme Court.

Edwards, 362 Fed. Appx. At 199.  This issue was also addressed in Donhauser v. Goord, 314

F.Supp.2d 119 (N.D.N.Y. 2004), in which declaratory judgment was initially granted asserting

that the requirement of an inmate to divulge history of sexual conduct as part of a SOP  was

violative of the  Fifth Amendment when it resulted in the withholding of good time credits.

Without addressing the substance of the issue, the Second Circuit vacated the district court's decision and remanded the case for further fact finding by the District Court. See Donhauser v. Goord, 181 Fed. Appx. 11 (2d Cir. 2006) (summary order remanding for further development of the factual record). Ultimately, the parties in Donhauser reached a settlement in 2008.[5]

Since McKune, several courts have held that the rationale in McKune extends to the loss of good time credits or jeopardizing the chance for parole, and that such a consequence for the failure to participate in a sex offender program does not constitute a violation of the Fifth Amendment. See Searcy v. Simmons, 299 F.3d 1220 (10th Cir. 2002) (where there is no liberty interest in good time credits, loss of eligibility for good-time credits as a consequence of refusing to admit crime of conviction does not violate Self-Incrimination Clause); Ainsworth v. Stanley, 317 F.3d 1 (1st Cir. 2002), cert. denied, 538 U.S. 999 (2003) (voluntary sexual offender treatment program which requires participant to admit crime and divulge other offenses does not

---

[5]   Donhauser was converted into a class action, including "[c]urrent or former New York State prisoners who have lost or been denied good time credits or have been threatened with the loss or denial of good time credits because of a refusal to admit guilt to criminal sexual conduct as part of the Sexual Offender Counseling Program." Donhauser v. Goord, 9:01-CV-1535 (N.D.N.Y Feb. 15, 2005). In 2008, DOCS and the plaintiff class entered into a settlement agreement, under which inmates would no longer be required to disclose details of past offenses in order to participate in the SOP or admit the commission of a particular crime. Donhauser v. Goord, 9:01-CV-1535 (N.D.N.Y. Oct. 17, 2008). The plaintiff asserts that he is not a member of the class in Donhauser because the underlying events in this case had not occurred at the time the class in Donhauser was certified in 2005. (Docket No. 33-4 at page 24). The plaintiff also asserts that he is not similarly situated to the class members in Donhauser because he was not convicted of a sex offense. Id.  The Court need not resolve whether Sayles was a member of the Donhauser class. The settlement in Donhauser, by its own terms, only resolved claims for injunctive relief, and did not resolve claims for monetary relief, as asserted here. See Donhauser v. Goord, Case No. 9:01-CV-01535, Docket No. 235 at page 7). Moreover, Donhauser does not resolve constitutional questions stemming from the admission requirements in the SOP and, again by the terms of the settlement, has no precedential value.  See Donhauser v. Goord, Case No. 9:01-CV-01535, Docket No. 235 at page 8).

violate Self-Incrimination Clause, even though non-participation results in denial of parole);

Thorpe v. Grillo, 80 Fed.Appx. 215 (3rd Cir. 2003) (finding no Fifth Amendment

self-incrimination violation because the inmate was not automatically denied consideration of

parole (citing McKune, supra) and because the inmate was not forced to incriminate himself at

trial); Wolfe v. Pennsylvania Dep't of Corr., 334 F.Supp.2d 762, 771 (E.D.Pa. 2004) (policy

requiring inmates participating in sex offender treatment program to fully disclose past sexual

behavior, including uncharged, potentially prosecutable conduct, did not violate inmate's Fifth

Amendment right against self-incrimination, even though inmate's failure to participate in

program resulted in negative parole recommendations, where participation in program was

voluntary, and policy did not automatically deprive inmate of consideration for parole); Daniels

v. Colorado Dept. of Corr., 2009 WL 3246198, *11 (D.Colo. Oct. 6, 2009) (granting summary

judgment on ground that plaintiff failed to demonstrate any issues of material fact regarding

whether defendants violated his right against self-incrimination where plaintiff was required to

admit guilt as part of a sex offender treatment program or face withholding of good time credits

and would be ineligible for parole).  As noted by the Court in  McChesney v. Hogan, 2010 WL

1027443, *7 (N.D.N.Y. Feb. 26, 2010), "[i]t is by now fairly well settled that risking the loss of

good time credits or jeopardizing the chance for parole, alone, does not qualify as sufficiently

compulsive to meet the test."

     The rationale of Searcy, Ainsworth and their progeny is that there is no inherent

constitutional entitlement to good time credits.  The state correctional systems can grant good

time credits based upon an inmate complying with various conditions. As the Tenth Circuit

stated in Searcy:

> Mr. Searcy therefore, was left with a choice: take advantage of a
> benefit the KDOC provided or turn down that benefit in order to
> avoid providing what he feared, perhaps legitimately, would be
> self-incriminating statements. "Although a defendant may have a
> right, even of constitutional dimensions, to follow whichever
> course he chooses, the Constitution does not by that token always
> forbid requiring him to choose." McKune, 536 U.S. at ----, 122
> S.Ct. at 2035 (O'Connor, J., concurring) (quoting McGautha v.
> California, 402 U.S. 183, 213, 91 S.Ct. 1454, 28 L.Ed.2d 711
> (1971)).

Searcy, 299 F.3d. at 1226. Although Sayles was not convicted of a sexual offense in a criminal

court, that fact does not impact the Fifth Amendment analysis relating to the voluntary

participation in an SOP program.  In light of Searecy, Ainworth, as well as the Second Circuit's

holding in Edwards, the defendants are entitled to summary judgment with respect to the

plaintiff's Fifth Amendment claims arising from the denial of parole or good time credits based

upon his failure to participate in the SOP.


**Due Process Claims**

The plaintiff has also asserted both substantive and procedural due process claims. These

claims also fail.

Sayles' substantive due process claim is based upon the argument that it was arbitrary for

the defendants to require the plaintiff to participate in a SOP program despite having no prior

history of sex offenses.  (Docket No. 33-4, page 20).  To allege a substantive due process

violation, the plaintiff must show the existence of a constitutional right, and that state action

interfering with that right was arbitrary, conscious shocking, or oppressive in a constitutional

sense. Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (citations omitted). Substantive due

process does not protect against government action that is merely "incorrect or ill-advised." Id.

Rather, it must be "so arbitrary that it violates substantive due process 'regardless of the fairness of the procedures used.'" Id. (quoting Foucha v. Louisiana, 504 U.S. 71, 72 (1992); other citations omitted).

Here, the right allegedly violated was the denial of parole and  good-time credits.  It must be noted, as discussed above, the record reflects that in each instance the DOP denied parole to Sayles on various grounds, only in some instances noting, in part, Sayles' failure to complete the SOP program.  The plaintiff has not demonstrated that he would have been granted parole but for his failure to participate in the SOP.  Initially, the plaintiff has no constitutionally protected right to parole. Fitfield v. Eaton, 2009 WL 3429791, at *2-3 (W .D.N.Y. Oct. 20, 2009) (granting motion to dismiss inmate's claim that he was denied parole opportunities due to his refusal to participate in SOP because inmate had no liberty interest in parole, conditional release, discretionary good time credits, or choosing his programming). See also Boothe v. Hammock, 605 F.2d 661 (2d. Cir. 1979)(New York parole statutes do not create interests entitled to due process protection). Thus, to the extent the plaintiff's due process claims are based upon the denial of parole, the defendants are entitled to summary judgment.

Similarly, the Second Circuit has held that the denial of good time credits due to the failure to participate in an SOP does not constitute a due process violation.  In Edwards, the Court held that "[p]risoners do not have a protected liberty interest in parole where the relevant statutory scheme endows prison authorities with discretion over the decision whether to grant it." Edwards, 362 Fed. Appx. at 196.  Noting the Supreme Court's decision in Wolff v. McDonnell, 418 U.S. 539, 556-58 (1974), holding that once good time credits are awarded under a statutory scheme they can only be revoked under certain circumstances, the Second Circuit reasoned:

> We are mindful that under <u>Wolff</u>, the arbitrary revocation of previously awarded good time credits runs afoul of the Fourteenth Amendment's guarantee of due process. ... But here, the discretionary award of good time credits to Edwards was reconsidered in accordance with the procedures generally set forth in N.Y. Comp.Codes R. & Regs tit. 7, §§ 261.3-261.4. Edwards received a second hearing before the Commissioner, through his designee, ultimately adopted the Gowanda TAC's recommendation that Edwards' refusal to participate in sex offender counseling made him an inappropriate candidate for such an award. Edwards does not contend that this second hearing was procedurally deficient under <u>Wolff</u> or any other applicable precedent. Moreover, Edwards does not dispute that his refusal to participate in sex offender counseling was a relevant consideration under the applicable statute. See N.Y. Corrections Law § 803(1)(a) (providing that good time credits "may be granted for ... progress and achievement in an assigned treatment program, and may be withheld, forfeited or canceled in whole or in part for ... failure to perform properly in the ... program assigned"). ...
> According to Edwards, this provision rendered his initial award of good time credits final and unalterable, except in the event of some subsequent misconduct on his part. ... We cannot agree. The overall import of § 803(4) is to reinforce the discretionary nature of the commissioner's decision regarding good time credits, not to curtail the commissioner's authority. Under petitioner's reading of the applicable statute and regulations, if it came to light that an award of good time credits was based on a factual error and a prisoner who posed a danger to the community was mistakenly set to be released early, the Commissioner would be powerless to take any action. We do not think that the statute can reasonably be interpreted to so stringently circumscribe the Commissioner's authority.

<u>Edwards</u>, 362 Fed. Appx. at 197.  Thus, in the context of a habeas proceeding, the Second Circuit held that it was permissible to deny good time credits based upon a failure to participate in a SOP program.  Moreover, to the extent that the plaintiff argues that he was barred from already-earned good time credits, the present action under §1983 is not appropriate.  It is well settled that such claims must be brought by way of a habeas corpus petition.  <u>Fifield v. Eaton</u>, 669 F.Supp.2d 294 (W.D.N.Y. 2009)(Larimer, J.); <u>Blake v. Fischer</u>, 2010 WL 2522198 at *11 (N.D.N.Y. 2010).[6]

---

[6]  This presents a separate and independent basis for the dismissal of the plaintiff's claims as they relate to good time credits.

In any event, the actions by the defendants in this case were not arbitrary.[7]  The plaintiff has acknowledged that his daughter sat on his lap during visitation, and that he did  touch her back and chest. Following the incident, a misbehavior report was issued and a disciplinary hearing was conducted  The hearing officer found the plaintiff guilty of a visiting violation arising out of the inappropriate touching of his daughter and the plaintiff was notified of the same. Although Sayles denied that the touching was of an inappropriate nature and further denied that the Correctional Officer actually witnessed the plaintiff touching his daughter, the hearing officer concluded otherwise. As noted above, Sayles does not argue that he was denied due process at the disciplinary hearing.  The plaintiff was subsequently recommended as a non-sex offender for a Sex Offender Counseling Program.[8]  In light of the administrative proceedings relating to Sayles touching of his daughter, the fact that Sayles was recommended to participate in the SOP program was not arbitrary as a matter of law.

Sayles also argues that he was denied procedural due process because he was never arrested or charged with or convicted of a sex offense stemming from the incident in which he was alleged to have touched his daughter.  The plaintiff has not presented any legal authority supporting the proposition that there is a requirement that he be formally arrested, charged and prosecuted for a sex offense prior to being recommended for the SOP program.  Moreover, the

---

[7]    It is worth noting that plaintiff does not allege that his right to procedural due process was violated in the disciplinary hearing giving rise to his recommendation for SOP participation, nor does he challenge the hearing before the Time Allowance Committee. Rather, plaintiff merely alleges that it was arbitrary for the defendants to require plaintiff to participate in such a program.

[8]   Sayles acknowledges that he was "recommended" to participate in the SOP and that he could have opted not to participate. (Docket No. 33-4 at page 16).

record does not reflect that Sayles initiated any attempts, through administrative proceedings, to

have the recommendation vacated. Instead, as noted above, Sayles consented to participate in the

program.

Based on this record, the plaintiff was afforded all the process he was due and the

defendants' conduct was not so "outrageously arbitrary as to constitute a gross abuse of

governmental authority." Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir. 1999).


**Qualified Immunity**

Even if the Court were to conclude summary judgment were not warranted based upon

the substantive arguments, the defendants would be entitled to qualified immunity inasmuch as

the law governing the constitutionality of sex offender treatment programs is not sufficiently

clear or uniform for plaintiff to prevail.

"The doctrine of qualified immunity protects government officials 'from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.' " Pearson v. Callahan, 555 U.S. 223,

129 S.Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "This

inquiry turns on the objective legal reasonableness of the action taken, assessed in light of the

legal rules that were clearly established at the time it was taken." Id. at 822. "For a right to be

clearly established, it must have been recognized in a particularized rather than a general sense."

Farid v. Ellen, 593 F.3d 233, 244 (2d Cir. 2010) (internal quotation omitted). However, "the

precise conduct at issue need not previously have been ruled unlawful." Zahrey v. Coffey, 221

F.3d 342, 357 (2d Cir. 2000). "The right must be sufficiently clear that a reasonable official

would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).

Resolution of a government official's qualified immunity claim involves a two-prong analysis, including (1) whether the plaintiff has alleged a deprivation of a constitutional right; and (2) whether such right was clearly established at the time of the defendant's alleged misconduct. <u>Pearson</u>, 129 S.Ct. at 815-16. It is within the court's discretion which prong should be addressed first in light of the circumstances of the case at hand. <u>Id.</u> at 818. A right is clearly established, if its "contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson</u>, 483 U.S. at 640. The exact conduct in question need not previously have been held unlawful; nevertheless, "in the light of the pre-existing law the unlawfulness must [have been] apparent." <u>See id.</u> Ultimately, this inquiry asks whether the state of the law at the time gave officials fair warning that their conduct was unconstitutional." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002). In making this determination, "[o]nly Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant." <u>Moore v. Vega</u>, 371 F.3d 110, 114 (2d Cir. 2004).

As evidenced by the unsettled case law on the issue, <u>see supra</u>, it has not been "clearly established," either in the Second Circuit or elsewhere, that the admission of guilt requirement of the SOP violates the plaintiffs' due process or self-incrimination rights. The plaintiff points to <u>Donhauser</u> as evidence that the defendants should have known they were violating the plaintiff's rights. As noted above, however, the Second Circuit vacated the district court's decision on in <u>Donhauser</u>, and the parties eventually reached a settlement in 2008. The defendants could not have known how <u>Donhauser</u> would be resolved while the operative facts in this case were taking

place in 2005 to 2007.  Moreover, <u>Donhauser</u> does not constitute any clear resolution of the legal issues presented in this case. As was noted in <u>Fifield</u>, there is simply "no clear consensus among other federal courts concerning this issue." <u>Fifield</u>, 669 F.Supp.3d at 299 (citing <u>Fournier v. Corzine</u>, 2007 WL 2159584 at *16 n.18 (D.N.J. July 26, 2007) (collecting cases, and noting that "[t]he Circuit Courts have taken a range of positions with respect to the issue whether the Self-Incrimination Clause is violated by loss of eligibility for good time credits or parole based upon failure to admit either the crime of conviction, or, in connection with a rehabilitation program, uncharged sexual conduct which may be criminal").

Accordingly, the defendants are entitled to dismissal of the plaintiff's claims based upon qualified immunity grounds. <u>Hirsch v. Desmond</u>, 2010 WL 3937303 (E.D.N.Y. 2010)(inasmuch as the Tenth Circuit and First Circuit have held that no unconstitutional compulsion exists where the refusal to participate in counseling program requiring disclosure of past, un-prosecuted offenses resulted in loss of ability to earn additional good-time credits, but the Ninth Circuit has held to the contrary; this circuit split refutes any suggestion that the plaintiff had a "clearly established" Fifth Amendment right to not incriminate himself as part of SOP).

**CONCLUSION**

For the foregoing reasons, there are no material issues of fact, and the defendants are entitled to summary judgment. Accordingly, defendants motion for summary judgment (Docket No. 22) is granted, and plaintiff's complaint (Docket No. 1) is dismissed in its entirety.  In light of the above, the Court need not address the defendants other arguments.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this

Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied.  Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.


/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
March 29, 2011